## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| REPUBLIC OF PERU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:08-cv-02109 (HHK) |
| v. | ) | |
| | ) | |
| YALE UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT YALE UNIVERSITY'S
### MOTION TO DISMISS
### FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and (3), for the reasons set forth in the accompanying statement of points and authorities, Defendant Yale University moves to dismiss the Complaint in its entirety on the grounds that the Court lacks personal jurisdiction over Defendant and that the District of Columbia is not the proper venue for adjudication of claims between a Peruvian plaintiff and a Connecticut defendant over property that has been located in Connecticut for nearly a century.

Respectfully submitted,

Date: March 4, 2009

/s/     Jonathan M. Freiman
Jonathan M. Freiman (*pro hac vice*)

/s/     Jeffrey R. Babbin
Jeffrey R. Babbin (D.C. Bar No. 384557)
WIGGIN AND DANA LLP
One Century Tower
P.O. Box 1832
New Haven, CT 06508-1832
(203) 498-4400
(203) 782-2889 (fax)
jfreiman@wiggin.com
jbabbin@wiggin.com

R. Scott Greathead (*pro hac vice*)
WIGGIN AND DANA LLP
450 Lexington Avenue
Suite 3800
New York, NY 10017
(212) 490-1700
(212) 490-0536 (fax)
sgreathead@wiggin.com

Attorneys for Yale University

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| REPUBLIC OF PERU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:08-cv-02109 (HHK) |
| v. | ) | |
| | ) | |
| YALE UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT YALE UNIVERSITY'S
## STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE

Nearly a century ago, Hiram Bingham ("Bingham"), a professor at Defendant Yale University ("Yale"), led scientific expeditions to the Incan ruins at Machu Picchu, Peru. During his expeditions, Bingham collected samples of old Incan materials, primarily fragments of ceramic, metal and bone, which were sent to Yale University in New Haven, Connecticut, for further scientific study.

Plaintiff Republic of Peru ("Peru"), a foreign government, claims that Yale's possession of the artifacts in Connecticut is tortious, and that Yale has breached undocumented agreements with Peru. None of Peru's claims have any merit, and by waiting nearly a century to bring them, Peru has left the parties with no living witness to support or deny them. But even if Peru's claims had any merit, and even if they were not time-barred, the District of Columbia would not be the right place to resolve them. Neither party is a resident of the District, the disputed property is located in Connecticut – as it has been for more than ninety years – and the supposedly wrongful acts of the defendant took place in either Connecticut or Peru.

This Court lacks personal jurisdiction over claims brought by an alien government against a Connecticut university seeking the return of property held in Connecticut. For much the same reasons, venue is also improper here. If Peru wishes to pursue its stale and meritless claims, it must do so in Connecticut.

## ARGUMENT

### I. There is no personal jurisdiction over Yale.

Personal jurisdiction is an "essential element" of a court's jurisdiction, "without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (internal quotation marks omitted). The burden of establishing personal jurisdiction lies with the plaintiff, who "must allege specific acts connecting the defendant with the forum." *First Chicago Int'l v. United Exch. Co. Ltd.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988); *see also Beusgens v. Brown*, 567 F. Supp. 2d 26, 31 (D.D.C. 2008). Peru does not, and cannot, meet that burden. This is a case brought by a foreign government against a Connecticut university – Peru's own allegations place the residence of the parties outside D.C., *see* Compl. ¶¶ 6-7 – involving objects that were excavated in Peru, shipped to Connecticut, and reside in Connecticut. In short, the District of Columbia has nothing to do with this dispute.

Under D.C. law, specific jurisdiction over a nonresident defendant is governed by the long-arm statute, D.C. Code § 13-423 (2008). *See GTE New Media Servs. Inc. v. Bellsouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). Under that statute, a plaintiff must plead "specific acts connecting the defendant with the forum." *First Chicago Int'l*, 836 F.2d at 1378. The D.C. long-arm statute requires those acts to fall within one of seven enumerated categories. The only categories with any conceivable connection to Peru's allegations are the requirement that the defendant "transact[] any business in the District," D.C. Code § 13-423(a)(1), and the

requirement that the defendant "caus[e] tortious injury in the District," D.C. Code § 13-423(a)(3)-(4). Moreover, specific jurisdiction is proper only if the plaintiff's claims "aris[e] from" the acts conferring jurisdiction over the defendant. D.C. Code § 13-423(b).[1] None of Peru's claims arise from Yale transacting any business in the District or from Yale causing tortious injury in the District. *See Gonzalez v. Internacional de Elevadores, S.A.*, 891 A.2d 227, 236 (D.C. 2006) (finding that tort allegedly occurring in Mexico did not arise from defendant's contacts in D.C.); *see also Helicopteros Nacionales de Columbia S.A. v. Hall*, 466 U.S. 408, 414 (1984) (Texas court cannot exercise personal jurisdiction over foreign corporation whose helicopter, provided to joint venture between Peruvian government instrumentality and Texas company, crashed in Peru).

**Replevin, "wrongful retention," and conversion:** The specific acts alleged to give rise to Peru's claims for replevin and "wrongful retention" are that "Yale has wrongfully exercised custody of artifacts exported from Peru by Bingham," and that "[d]espite Peru's demand for return of these artifacts . . . Yale has refused." Compl. ¶ 88. Similarly, the acts alleged to give rise to Peru's conversion claim are that "Yale has refused Peru's demand that the artifacts . . . be returned," has "failed to conduct research and studies to the extent agreed," and "has willfully exercised dominion and custody" over Peru's property. Compl. ¶ 100. None of these acts "connect[] the defendant with the [District of Columbia]." *First Chicago Int'l*, 836 F.2d at 1378.

---

[1] Yale is not subject to general jurisdiction in D.C. for two separate and independent reasons. First, Peru served Yale with the complaint in Connecticut – not the District of Columbia – which alone negates the possibility of general jurisdiction. *See Gonzalez v. Internacional De Elevadores, S.A.*, 891 A.2d 227, 233 (D.C. 2006). Second, the Complaint alleges no facts relevant to general jurisdiction, which may be exercised only where a non-resident corporate defendant has "continuous and systematic" contacts with the forum, *Helicopteros*, 466 U.S. at 416, and is carrying on a "consistent pattern of regular business activity" in the District of Columbia. *Gonzalez*, 891 A.2d at 233; *see* D.C. Code § 13-334(a) (2008).

To the contrary, Plaintiff Peru alleges that Bingham excavated the artifacts in Peru, Compl. ¶ 20, that Yale took possession of the artifacts in Connecticut, and that Yale kept them in Connecticut after Peru demanded their return. Compl. ¶¶ 22, 23, 28, 34, 39, 57, 74, 75, 99, 118. Accordingly, the Court lacks personal jurisdiction over Yale with respect to the claims for replevin, wrongful retention or conversion – Counts II, III, and IV.[2]

**Breach of contract:** For its fifth cause of action, Peru alleges that it "allowed Yale to conduct the Bingham expeditions and to export artifacts from Peru on the condition that the artifacts and related materials be returned to Peru when Peru demanded." Compl. ¶ 104. It further alleges that "Yale agreed to these terms," *id.*, but "has breached its agreement with Peru by failing to return the artifacts and related materials, despite Yale's [sic] demand for their return." Compl. ¶ 106. Personal jurisdiction over a non-resident defendant for a contract claim is possible only where the "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" create a "substantial connection" with the forum state. *Helmer v. Doletskaya*, 393 F.3d 201, 205 (D.C. Cir. 2004) (internal quotation marks omitted). Peru's allegations do not satisfy this standard. The parties to the alleged agreement are Yale and Peru, neither of which is a D.C. resident. Compl. ¶¶ 6, 7, 106. Peru does not allege that either Yale or Peru traveled to D.C. to negotiate or execute the supposed agreement. To the contrary, the alleged sources of Yale's supposed promises appear to include a "draft[] memorandum of a working agreement" written by Bingham when he lived and worked in New Haven, Compl. ¶¶ 14, 41, and two executive decrees of the Peruvian government

---

[2] Counts IX and X allege that Yale conspired with Bingham to commit "wrongful retention" and conversion. *See* Compl. ¶¶ 133-160. Like the underlying torts that were the object of the alleged conspiracy, the civil conspiracy claims have no connection with D.C., and the Court therefore lacks jurisdiction over Yale with respect to them.

issued in Peru. Compl. ¶¶ 30, 31, 35, 36. The terms of the alleged agreements are similarly devoid of connection to the District of Columbia, providing only that Bingham would excavate the artifacts in Peru and send them to Connecticut, where they would be studied, and (according to Peru) then returned to Peru. Compl. ¶¶ 30, 31, 33, 36, 38, 41, 43, 104. Finally, Yale's putative failure to study the artifacts, or to return some of them to Peru, also took place in Connecticut. Compl. ¶¶ 32, 34, 39, 57, 74, 75, 118. Accordingly, even if there were an agreement between Yale and Peru, it would not have a "substantial connection" with D.C., and personal jurisdiction over Yale with respect to the claim for breach of contract (Count V) is therefore lacking.

**Unjust Enrichment:** Count XIII asserts a violation of the quasi-contractual doctrine of unjust enrichment. As with the breach of contract claim, the unjust enrichment claim provides no basis for personal jurisdiction over Yale in D.C. It alleges that Peru "conferred a benefit on Yale by allowing Yale to export Peru's artifacts," that "Yale accepted and retained the benefit under inequitable circumstances by its refusal to return the artifacts," and that "Yale has been unjustly enriched" by these actions. Compl. ¶¶ 162, 164, 165. These allegations describe neither a tortious injury occurring in the District of Columbia nor an injury arising from business transactions carried out there.

**Breach of fiduciary duty:** Peru alleges that its agreement to permit Yale to export the artifacts to Connecticut established a fiduciary relationship between Yale and Peru, which Yale breached by "fail[ing] to return the artifacts when Peru demanded . . . [and failing] to conduct scientific research and studies of the artifacts as [it] had agreed." Compl. ¶¶ 111, 113. The parties to the alleged fiduciary relationship are Yale and Peru, neither of which is a D.C. resident, and Yale's alleged failure to study or return the artifacts took place in Connecticut, where the

artifacts have been for almost 100 years, and where they remain. Compl. ¶¶ 32, 34, 39, 57, 74, 75, 99, 118. The acts giving rise to the fiduciary breach claims have no connection with the District. The Court therefore lacks jurisdiction over Yale for Peru's claim of breach of fiduciary duty – Count VI.

**Fraud and Fraudulent Misrepresentation:** In support of these claims, Peru merely repeats its breach of contract allegations that Yale "promised that it would conduct scientific research and examinations of the artifacts and that it would return the artifacts . . . when Peru demanded," and that Peru "relied on Yale's representation, as evidenced by Peru allowing the . . . temporary exportation of artifacts." Peru then tries to paint these claims as torts by additionally alleging that Yale "knew that [its] representation was false" and intended to deceive Peru. Compl. ¶¶ 118, 121, 122, 127-130; *cf.* Compl. ¶¶ 104, 106. But Peru has not alleged (and could not) that Yale made its supposed false representations in the District of Columbia, or that Peru's actions in reliance on those representations occurred anywhere but Peru. While Peru has failed to plead the precise nature of those representations, when they occurred, or where they were made, any allegedly false representations made by Yale to Peru would have had to have occurred in either Connecticut or Peru. And Peru seems to think that its reliance was manifested in what it calls the Third Decree – an "executive order" of the Peruvian government, issued (naturally) in Peru. Compl. ¶¶ 30, 42. As with the other claims, the acts giving rise to these claims fail to connect Yale with the District of Columbia, and this Court therefore lacks personal jurisdiction over Yale with respect to Counts VII and VIII.[3]

---

[3] Peru also claims that Yale conspired with Bingham to commit fraud and fraudulent misrepresentation. Compl. ¶¶ 147-160. Like the underlying claims, the civil conspiracy claims have no connection with D.C. and the Court therefore lacks jurisdiction with respect to Counts XI and XII.

For the reasons above, Peru's claims do not arise out of the transaction of business or tortious injury within the District of Columbia, and the allegations thus fail to meet the requirements for personal jurisdiction over an out-of-state corporation set forth in the D.C. long-arm statute.[4] For the same reasons, it is also clear that the exercise of jurisdiction would not comport with due process. The District of Columbia has no special interest in adjudicating a dispute between a foreign government plaintiff and a Connecticut university over property that has been in Connecticut for almost a century. *See World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). The Government of Peru is not a resident of the District of Columbia, and consequently the District has little or no interest in providing a forum for its claims. *Gonzalez*, 891 A.2d at 235 n.11. Accordingly, the exercise of jurisdiction over Yale would violate the constitutional minimum of "fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Gonzalez*, 891 A.2d at 234-35 (finding no personal jurisdiction over non-resident defendant where alleged tort was not "purposefully directed" at anyone in D.C.). Peru's claims against Yale must therefore be dismissed for lack of personal jurisdiction.[5]

---

[4] Peru also asserts causes of action for "Violation of Peruvian Law" and "Request for Declaratory Judgment." These counts (Count I and Count XIV) make no allegations that are not made in the conversion, wrongful detention, replevin, contract, unjust enrichment, fraud and fiduciary breach claims. They fail to establish personal jurisdiction over Yale for the same reasons that the counts they mimic fail to establish personal jurisdiction.

[5] The Complaint alleges that Yale entered into agreements with the National Geographic Society ("NGS") regarding funding for two of Bingham's expeditions. *See, e.g.*, Compl. ¶¶ 13, 18, 61. But Peru's claims do not arise out of the NGS agreements, making the agreements irrelevant to jurisdiction. Peru cannot argue that Yale's agreements with NGS somehow subject Yale broadly to jurisdiction in D.C., as it is well established that "the mere existence of a contract between a foreign corporation and a local resident is not enough to establish minimum contacts sufficient to satisfy due process." *Gonzalez*, 891 A.2d at 236. That is especially true where, as here, the plaintiff "was not even a party to the contract." *Id.*

7

## II.    The District of Columbia is not the proper venue for this action.

The Complaint asserts that venue in the District of Columbia is proper under 28 U.S.C. § 1391(a)(2), which authorizes venue in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Peru has the burden of showing that venue is proper in this Court "'with respect to *each* cause of action.'" *Elemary v. Philipp Holzmann A.G.*, 533 F. Supp. 2d 144, 149 (D.D.C. 2008) (quoting *Lamont v. Haig*, 590 F.2d 1124, 1135 (D.C. Cir. 1978)) (emphasis added). The preceding section makes plain that Yale does not have sufficient "minimum contacts" with D.C. to support personal jurisdiction for any of Peru's claims. But even if it were otherwise, it would be incontrovertible that "a substantial part of the events or omissions giving rise to the claim" did not occur in D.C. 28 U.S.C. § 1391(a)(2) (2008). In short, nothing in Peru's complaint suggests that any part, let alone "a substantial part" of any of its stale, meritless claims arose from events or omissions in the District of Columbia. Accordingly, venue is improper, and the suit should be dismissed.

## III.    This civil action must be dismissed or transferred.

Where a court lacks personal jurisdiction over a defendant, dismissal is proper. *Ruhrgas*, 526 U.S. at 584 (without personal jurisdiction, "the court is powerless to proceed to an adjudication"). Likewise, a court may dismiss a suit where venue is improper. 28 U.S.C. § 1406(a) (2008) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss . . . such case . . ."). Here, where there is neither personal jurisdiction over the defendant nor proper venue, this Court has two independent bases for dismissal available. Following dismissal, Plaintiff could re-file its suit in a district where jurisdiction and venue are proper, if and when it sees fit to do so.

8

Defendant acknowledges that dismissal is not the only remedy for a complaint filed where personal jurisdiction is lacking or venue is improper. "[I]f it be in the interest of justice," the Court may cure such defects by transferring a case to a district court where venue is proper and personal jurisdiction exists. 28 U.S.C. § 1406(a); *see also Sinclair v. Kleindienst*, 711 F.2d 291, 293-94 (D.C. Cir. 1983) (Section 1406(a) can be used to remedy defects of venue *or* personal jurisdiction); *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465 (1962) ("Nothing in [the] language [of 1406(a)] indicates that the operation of the section was intended to be limited to actions in which the transferring court has personal jurisdiction over the defendants.").[6] The District of Connecticut – where the Defendant resides and where the objects at issue have been preserved for nearly a century – is the only such court.

## CONCLUSION

For the reasons set forth above, this civil action should be DISMISSED for lack of personal jurisdiction and improper venue, or, if this Court finds that it is in the interests of justice, TRANSFERRED to the District of Connecticut pursuant to 28 U.S.C. § 1406(a).

---

[6] 28 U.S.C. § 1631 provides another mechanism for the transfer of an action filed where personal jurisdiction is lacking. *See Trujillo v. Williams*, 465 F.3d 1210, 1223 (10th Cir. 2006) (transferring case under 28 U.S.C. § 1631 where personal jurisdiction and venue were lacking); *Kieffer v. United States Parole Comm'n*, 1991 WL 251862, at *1 (D.D.C. Nov. 12, 1991) (unpublished opinion) (transferring case pursuant to 28 U.S.C. § 1631 for lack of personal jurisdiction).

Respectfully submitted,

Date: March 4, 2009

/s/      Jonathan M. Freiman
Jonathan M. Freiman (*pro hac vice*)

/s/      Jeffrey R. Babbin
Jeffrey R. Babbin (D.C. Bar No. 384557)
WIGGIN AND DANA LLP
One Century Tower
P.O. Box 1832
New Haven, CT 06508-1832
(203) 498-4400
(203) 782-2889 (fax)
jfreiman@wiggin.com
jbabbin@wiggin.com

R. Scott Greathead (*pro hac vice*)
WIGGIN AND DANA LLP
450 Lexington Avenue
Suite 3800
New York, NY 10017
(212) 490-1700
(212) 490-0536 (fax)
sgreathead@wiggin.com

Attorneys for Yale University